UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

Emmanuella Armand, et al,

                Plaintiffs,

vs.

Lifestance Health Group, Inc.,

                Defendant.

Case No: 6:23-cv-00103 PGB-EJL

Class & Collective Action

**PLAINTIFFS' RESPONSE TO THE MOTION TO DISMISS [DE-28]**

    Undesigned counsel, on behalf of the Lead Plaintiffs named above, files this Response in opposition to *LifeStance Health Group, Inc.'s* ("*LifeStance*") Motion to Dismiss the Amended Complaint [DE-28], and in support thereof states as follows:

**FACTUAL AND PROCEDURAL HISTORY**

    1.    This lawsuit was filed on January 20, 2023, as a putative collective and class action lawsuit against LifeStance seeking various forms of relief as articulated in the original pleadings stemming from LifeStance's unlawful business practices that resulted in its failure to properly compensate the Lead Plaintiffs and other current and former employees of LifeStance as defined in the original and amended complaint.

    2.    Lead Plaintiffs and their trial counsel decided to amend the original complaint to revise the claims and supporting facts based on counsel's further investigation into the key facts giving rise to this lawsuit, which included a significant number of interviews of LifeStance employees (former and current) who wanted to participate in this lawsuit due to their similar experience with the corporation, the

review of LifeStance's public filings with the Securities and Exchange Commission, and similar efforts by counsel to obtain evidence to support the case.

3.  LifeStance had yet to file a responsive pleading, thus, based on Counsel's further investigation and dialogue and agreement between the lawyers, the undersigned filed the Lead Plaintiff's Amended Complaint on June 1st. [DE-24]

4.  LifeStance filed its Motion to Dismiss the First Amended Complaint [DE-28] on June 30th, when the two sides were unable to reach an agreement during their mediation conference on June 27th.

## MEMORANDUM OF LAW

### I. STANDARD OF REVIEW

In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, the factual allegations in the ***complaint must be accepted*** as true and any ambiguities or doubts are to be resolved in favor of the plaintiff, which unequivocally means that the Defendants cannot attempt to persuade the court to dismiss the case based on matters that are not presented within the four corners of the pleading. *Shibata v. Lim*, 133 F. Supp. 2d 1311, 1315 (M.D. Fla. 2000) (citing *In re Johannessen*, 76 F.3d 347, 350 (11th Cir. 1996)). Plaintiff must show plausible entitlement to relief by alleging sufficient facts and legal grounds. *Haskin v. R.J. Reynolds Tobacco Co.*, 995 F. Supp. 1437, 1439 (M.D. Fla. 1998). If a party pleads facts that are facially plausible, a motion to dismiss should be denied. *See Floyd v. City of Sanibel*, No. 2:15-cv-00795-SPC-CM, 2017 U.S. Dist. LEXIS 2667, at *7 (M.D. Fla. Jan. 9, 2017). "A claim is facially plausible when

the court can draw a reasonable inference, based on the facts pled, that the opposing party is liable for the alleged misconduct." *Id.*

Further, in deciding a motion to dismiss, the Court's evaluation of the motion is limited to the four corners of the plaintiff's complaint and the attached exhibits, and nothing more as the analysis at this stage is about the sufficiency of the pleadings and not the evaluation of evidence as the Court would do when evaluating a motion for summary judgment. *Cabrera v. 27 of Miami Corp.*, No. 09-20170-CIV-O'SULLIVAN, 2009 U.S. Dist. LEXIS 64278, at *6 (S.D. Fla. July 13, 2009) citing *Grossman v. Nationsbank*, 225 F.3d 1228, 1231 (11th Cir. 2000).

Notably, the "threshold of sufficiency for a complaint to survive a motion to dismiss is exceedingly low." *Directv, Inc. v. Cardona*, 275 F. Supp. 2d 1357, 1361 (M.D. Fla. 2003), citing *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 703 (11th Cir. 1985). "A court shall not grant a motion to dismiss unless it appears beyond doubt that a claimant can prove no set of facts in support of his claim that would entitle him to relief." *Burger King Corp. v. Austin*, 805 F. Supp. 1007, 1010 (S.D. Fla. 1992); *see also Lopez v. First Union Nat'l Bank*, 129 F.3d 1186, 1189 (11th Cir. 1997). A dismissal is not appropriate if the factual allegations "raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Edwards v. Cornelius*, 6:11-cv-1630-Orl-36DAB, 2012 U.S. Dist. LEXIS 79587, at *9 (M.D. Fla. Jun. 8, 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007).

II.  **THE AMENDED COMPLAINT ALLEGES SUFFICIENT FACTS TO STATE A CAUSE OF ACTION FOR UNPAID WAGES.**

3

LifeStance argues that "Plaintiffs were highly educated, licensed professionals exempt from the FLSA's overtime and minimum wage provisions." The following requirements must be met for a professional to be exempt from the FLSA: (1) the employee must receive a salary or fee basis at a rate of at least $684 per week (or $455 per week if employed in the Commonwealth of the Northern Mariana Islands, Guam, Puerto Rico, or the Virgin Islands by employers other than the Federal government); (2) the employee's primary duty must consist of performing work that requires advanced knowledge; (3) the advanced knowledge must be in a field of science or learning; and (4) the advanced knowledge must be customarily acquired by a prolonged course of specialized intellectual instruction. 29 C.F.R. §§ 541.300, 541.301.

In this instance, there were multiple weeks that Plaintiffs did not receive a salary or fee basis at a rate of at least $684 per week, as alleged in the Amended Complaint.[1] *See* DE-24, ¶ 61, 104, 114. Therefore, the professional exemption does not apply, and the Plaintiffs are protected under the FLSA.

---

[1] The factual allegations in the Complaint must be taken as true for purposes of a motion to dismiss. Plaintiffs have alleged sufficient facts to show that the professional exemption does not apply given that the Plaintiffs did not receive a salary of at least $684 per week. To accept the Defendants' argument, this Court would have to reject the facts alleged in the Complaint, in violation of Fed. R. Civ. P. 12(b)(6). LifeStance's misreading of the statute and the allegations in the Amended Complaint notwithstanding, the Amended Complaint makes it abundantly clear that none of the Lead Plaintiffs received a salary, none were paid a defined fee each week for the time they were employed, there were several pay periods that all of these individuals received no pay, and there are several pay periods for which LifeStance seeks to recover the sums paid to the Lead Plaintiffs because LifeStance treated this money as a loan and not a real wage or fee.

Exemptions under the FLSA are construed narrowly and the burden is on the employer to show that it is entitled to an exemption under the FLSA.[2] *Klinedinst v. Swift Invs., Inc.*, 260 F.3d 1251, 1254 (11th Cir. 2001). The employer must prove applicability of an exemption by "clear and affirmative evidence." *Abel v. S. Shuttle Servs.*, 301 F. App'x 856, 859 (11th Cir. 2008), citing *Birdwell v. City of Gadsden*, 970 F.2d 802 (11th Cir. 1992). LifeStance did not and cannot prove that Plaintiffs are exempt from the wage requirements of the FLSA at this stage of the litigation, especially by making obscure arguments about issues that are not proper for consideration in evaluating the sufficiency of the pleadings.[3]

Evaluating whether an employee is exempt "requires a thorough, fact-intensive analysis of the employee's employment duties and responsibilities." *Girolamo v. Cmty. Physical Therapy & Assocs.*, No. 15 C 2361, 2016 U.S. Dist. LEXIS 90128, at *15 (N.D. Ill. July 12, 2016), citing *Schaefer-LaRose v. Eli Lilly & Co.*, 679 F.3d 560, 572 (7th Cir. 2012). Ruling on whether the Plaintiffs are exempt would be premature at this stage of the litigation, as it would require the Court to consider matters that are outside of the four corners of the Complaint.

Nevertheless, LifeStance cites *Mayhew v. Gen. Med.*, PC, No. 18-CV-2177-RJD, 2020 WL 338150 (S.D. Ill. Jan. 21, 2020) to support its argument that nurse practitioners are exempt from the FLSA under the professional exemption. However,

---

[2] That burden is satisfied through the accumulation and presentation of evidence, either at trial or on a motion for summary judgement, not pursuant to a motion to dismiss where the Court cannot consider such extrinsic matters.
[3] Arguments raised in a Motion to Dismiss are not "evidence".

5

*Mayhew* is not controlling or even applicable to this case. Notably, in *Mayhew* the court was ruling on a motion for summary judgment – not a motion to dismiss. After conducting a rigorous review of the facts, circumstances and evidence presented by both parties, the court ruled that the plaintiff in that case (not all nurse practitioners) qualified as a professional employee based on her job duties, the specific services she performed, *and* her salary that compensated her far more than the minimum required for a fee basis, therefore, making her exempt from the FLSA's overtime requirements. This isolated case was not intended to rewrite the FLSA, but to apply the statute to a particular set of facts and circumstances, and to decide how the statute applied in that specific instance.

As stated earlier, the Amended Complaint makes it clear that there were multiple weeks that LifeStance failed to pay the Plaintiffs (and other LifeStance employees) a salary or fee basis at a rate of at least $684 per week. *See* DE-24, ¶ 61, 104, 114. Moreover, a ruling on whether Plaintiffs qualify for the learned professional exemption would be premature, as the parties have not presented any evidence regarding the Plaintiffs' job duties and the services they performed.

LifeStance also sidesteps the fact that members of the collective action include therapists and social workers, which are not exempt under the FLSA. DE-24, ¶ 69; *see also Solis v. Washington*, 656 F.3d 1079, 1088 (9th Cir. 2011)(concluding that defendant failed to meet its burden of showing that its social workers came within the "learned professional" exemption of the FLSA).

LifeStance argues that Plaintiffs failed to state a claim for unpaid wages under the FLSA because their Amended Complaint does not allege the amount and extent of their work as needed to establish a prima facie case of an FLSA violation. Plaintiffs have in fact alleged sufficient facts to state a claim against LifeStance for unpaid wages in violation of the FLSA. To state a claim for violation of the FLSA's overtime provisions, the plaintiff "must plead sufficient facts, plausible on their face, to demonstrate that he worked more than forty hours in at least one workweek, and that the defendant failed to pay the requisite premium for those overtime hours." *Rodriguez v. City Buffet Mongolian Barbeque Inc.*, No. 8:18-cv-2745-T-60CPT, 2020 U.S. Dist. LEXIS 84823, at *10 (M.D. Fla. Apr. 22, 2020). To state a claim for violation of the FLSA's minimum wage provisions, the claimant must plead sufficient facts to show that he was employed by the defendant and the defendant did not pay him the minimum hourly rate as required by the FLSA. *Moser v. Action Towing Inc.*, No. 8:16-cv-420-T-35JSS, 2017 U.S. Dist. LEXIS 222961, at *2-3 (M.D. Fla. Feb. 6, 2017).

Here, Plaintiffs allege the following, among other material facts, to support their FLSA claim against LifeStance:

⇒ LifeStance refused to pay the Plaintiffs "minimum wages, overtime wages, and wages in general (i.e., no payment was made at all) for one or more workweeks during the applicable Collective Period[.]"[4] *See* DE-24, ¶ 114.

⇒ Plaintiffs routinely worked forty and more hours per week several times a month while employed by LifeStance and many of the Plaintiffs went through periods in which they did not receive any compensation for an entire month. *See* DE-24, ¶¶ 60- 61.

---

[4] The Collective Period is from January 2020 to present. *See* DE-24, ¶ 58.

⇒ LifeStance deprived all the collective action members (which includes the Plaintiffs) of earning at least the federal minimum wage for all hours worked, and/or failed to pay them overtime wages when appropriate. *See* DE-24, ¶ 66.

⇒ "[S]ince the advances were a 'loan' and not wages (according to LifeStance), then the [Plaintiffs] did not actually receive any wages during their first six to twelve months of employment[.]" *See* DE-24, ¶ 63.

These allegations are sufficient to state a claim against LifeStance for violation of the FLSA's overtime and minimum wage provisions. LifeStance's histrionics amount to nothing more than a denial of the facts alleged, which is not a proper basis for dismissal under Fed. R. Civ. P. 12(b)(6). *See Posen Constr. v. Lee Cty.*, 921 F. Supp. 2d 1350, 1361 (M.D. Fla. 2013) (court denied defendant's motion to dismiss, finding that the "[defendant] may not like what the allegations [in the complaint] say, but Rule 12(b)(6) is not properly invoked when one simply wants to dispute what is alleged.").

LifeStance further argues that Plaintiffs' effort to plead this cause of action on behalf of a collective of other current and former LifeStance employees fails because they do not allege how these employees were similarly situated. Specifically, LifeStance argues the Amended Complaint does not contain allegations establishing that Plaintiffs all had similar job duties and were paid the same way, which simply is not true.

The Amended Complaint contains allegations establishing that Plaintiffs were paid the same way and had similar job duties. Plaintiffs allege that a collective action is appropriate under the circumstances because the collective action members are similarly situated in that "[e]ach was to be paid on the same pay scale and formula, making the problems alleged herein the same for any person that was or is a Clinician."

8

DE-24, ¶ 66. Plaintiffs further allege that "LifeStance compensated the collective action members in the same manner and under the same unlawful employee compensation program[.]"DE-24, ¶ 71; *see also* DE-24, ¶¶ 27, 34-36 (further explaining the manner in which LifeStance compensated Plaintiffs and explaining that LifeStance was "obligated to compensate Clinicians between 50 and 60% of the gross amounts billed to payors related to Clinician's treatment and service to LifeStance patients.").[5]

The Amended Complaint likewise contains allegations establishing that Plaintiffs and members of the collective action had similar job duties. LifeStance cites to *St. Croix v. Genentech, Inc.* to support their argument that the Amended Complaint should be dismissed because Plaintiffs "fail[ed] to plead allegations that the collective members had similar job duties[.]" *See* DE-28, p. 11-12. However, in *St. Croix*, the plaintiff only provided her job title and failed to provide any "description of the job duties (or even the job titles) of the alleged similarly situated employees." *St. Croix v. Genentech, Inc.*, 2012 U.S. Dist. LEXIS 86742, *6 (M.D. Fla. June 22, 2012).

Unlike in *St. Croix*, the Plaintiffs have provided their job titles and a description of their job duties, along with the job titles of the similarly situated employees and a description of their job duties. *See* DE-24, ¶ 8, 58, 69, 75. As stated in the Amended

---

[5] As explained in the Amended Complaint, Plaintiffs repeatedly asked LifeStance to provide them with information regarding how their wages were calculated and what deductions were made from their wages each pay period, but LifeStance refused to provide this information. *See* DE-24, ¶¶ 35-37. Thus, LifeStance cannot argue that Plaintiffs claims should be dismissed because they failed to allege with more specificity, how each Plaintiff was paid and how their pay structures were similar. LifeStance has intentionally withheld this information from the Plaintiffs. Therefore, LifeStance cannot use their own lack of transparency to shield them from liability.

9

Complaint, members of the collective action include therapists, psychiatric nurse practitioners, and clinical social workers. DE-24, ¶ 69. Furthermore, "Lead Plaintiffs (and the other individuals that would ultimately comprise the collective and class members) are currently, or were at one time, nonphysician employees of LifeStance classified as a 'Clinician,' a term used by LifeStance to identify nonexempt, W2 employees who provide mental health clinical treatment or therapy to children, adolescents, and adults suffering from a variety of mental health issues." DE-24, ¶ 8. Again, LifeStance is merely denying Plaintiffs' allegations, which is not a proper basis for dismissal under Rule 12(b)(6). As such, the Motion to Dismiss should be denied.

### III. THE AMENDED COMPLAINT ALLEGES SUFFICIENT FACTS TO STATE A CAUSE OF ACTION UNDER THE FLSA'S ANTI-KICKBACK PROVISION.

LifeStance argues that Plaintiffs failed to state a claim for violation of the FLSA's anti-kickback provision because the "pleadings make clear that they agreed to a plainly written advance-on compensation arrangement that is legal and has been endorsed by the U.S. Department of Labor." This argument misconstrues and ignores the express allegations contained in the Amended Complaint, and essentially attempts to rewrite the narrative in LifeStance's favor. Once again, LifeStance is merely denying the allegations in the Amended Complaint and attempting to raise an argument that is not proper for a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6).

Pursuant to 29 C.F.R. § 531.35, wages cannot be considered to have been paid by the employer to the employee unless they are paid finally and unconditionally or "free and clear." Furthermore, "[t]he wage requirements of [the FLSA] will not be met

10

where the employee 'kicks-back' directly or indirectly to the employer . . . the whole or part of the wage delivered to the employee." 29 C.F.R. § 531.35.[6]

The Amended Complaint states that "LifeStance routinely and systematically made illegal deductions to the Clinician's pay without reason or description" which forced Clinicians to kick-back their wages to LifeStance. DE-24, ¶¶ 122, 123. The Amended Complaint further states that such deductions frequently "caused Clinicians to earn $0 for work conducted or, less than $450.00 in a given week." DE-24, ¶ 126. These allegations are sufficient to state a claim against LifeStance for illegal kickbacks in violation of 29 C.F.R. § 531.35. *See Ketner v. Branch Banking & Tr. Co.*, 143 F. Supp. 3d 370, 375 (M.D.N.C. 2015)(finding that plaintiffs alleged sufficient facts to state a claim for violation of the FLSA's anti-kickback provision based on an agreement that required employees to repay training costs if they resign within 5 years of employment). Therefore, Defendants' Motion to Dismiss Count II should be denied.

The arguments raised by LifeStance go to whether the Plaintiffs will be able to present enough evidence to prove LifeStance violated the anti-kickback provision of the FLSA – not whether Plaintiffs have alleged sufficient facts to state a cause of action against LifeStance for violating the anti-kickback provision. Nevertheless, out of an abundance of caution, Plaintiffs will address LifeStance's argument that they

---

6 This rule is meant to keep an employer from requiring workers to cover expenses that primarily benefit the employer. *See Mayhue's Super Liquor Stores, Inc. v. Hodgson*, 464 F.2d 1196, 1199 (5th Cir. 1972) (finding than an agreement that "tended to shift part of the employer's business expense to the employees" violated the anti-kickback provision of the FLSA).

11

employed an "advance-on compensation arrangement that is legal and has been endorsed by the U.S. Department of Labor."

LifeStance would like the Court to believe they were simply advancing compensation to Plaintiffs and recouping the advance through paycheck deductions in compliance with the FLSA. They would also like the Court to believe that their Employment Agreements, "set forth in clear language" how the Plaintiffs would be "advanced" compensation and how the advanced compensation would be repaid through paycheck deductions. DE-28, p. 2. Lastly, LifeStance would like the Court to believe that Plaintiffs voluntarily agreed to this compensation scheme by "sign[ing] a written contract making all of this clear." *Id*. This could not be further from the truth.

The compensation scheme employed by LifeStance is not consistent with the type of compensation practices that have been endorsed by the DOL and federal courts as consistent with the FLSA.

The practice of advancing compensation to an employee and recouping the advance through paycheck deductions may be complaint with the FLSA if the employer makes the appropriate deductions from the employee's pay to ensure the employee is properly compensated for all hours worked. The requirements of the FLSA are not satisfied if the deductions result in the employee getting paid less than the federal minimum wage for any given week or a failure to pay the employee the requisite premium for any overtime hours worked. An employer also cannot use an advance to circumvent the requirements of the FLSA or to create a debt obligation without the employee's knowledge and consent.

Here, the paycheck deductions made by LifeStance were not commensurate with the work performed by the employee. In other words, the deductions were not tied to the number of hours worked by Clinicians or any other ascertainable metric. Instead, LifeStance made arbitrary and illegal deductions from Plaintiffs paychecks based on a nebulous standard that was not tied to the hours worked by Plaintiffs, which frequently resulted in Plaintiffs receiving no compensation for the time that they worked and caused them to become substantially indebted to LifeStance. Moreover, under LifeStance's compensation system, Clinicians could, and often did, work over forty hours per week and the hours spent working would not result in the repayment of the advance. This resulted in Clinicians somehow falling further and further into "debt" despite working full time for LifeStance.

Generally, if an employer advances wages to an employee, the amount advanced is calculated to ensure the employee will earn the funds advanced so long as the employee works for the time period that the funds were advanced for. For example, if on January 1st an employee requests an advance on February's compensation and the employer agrees and provides the employee with an advance on February's pay, then generally the employee will earn the wages that were advanced so long as he/she works full time for the month of February.

Unlike the situation described in this example, LifeStance paid the Plaintiffs an arbitrary amount per month under the guise of an "advance" but based on the unscrupulous policies implemented by LifeStance, Plaintiffs would not earn the funds advanced even if they worked full time for the entire month. Thus, instead of earning

13

wages for the time that they worked they were somehow becoming more and more indebted to LifeStance the longer they remained employed, regardless of how many hours they worked. This is due to the fact that Plaintiffs were unable to earn patient billing fees (according to LifeStance) sufficient to offset the insurmountable debt obligation purportedly created by these "advances" due to the arbitrary policies and procedures implemented by LifeStance. *See* DE-24, ¶ 38. These policies allowed LifeStance to avoid paying Plaintiffs their earned wages. Needless to say, a compensation scheme such as the one used by LifeStance, has never been endorsed by the Department of Labor or any federal court.

Furthermore, as explained in the Amended Complaint, LifeStance's compensation scheme was anything but transparent.[7] Plaintiffs frequently requested information from LifeStance regarding the metrics or data used to calculate their gross compensation and the deductions from their paychecks, in addition to information regarding the amount(s) applied to their alleged advance each pay period.[8] DE-24, ¶ 37. LifeStance, however, did not share any information with Plaintiffs about the metrics used to calculate their gross compensation each pay period, nor did LifeStance provide Plaintiffs with any information regarding deductions from their "advance" each pay period. *See* DE-24, ¶¶ 35-37. In other words, Plaintiffs pay stubs merely stated

---

[7] LifeStance refers to their unlawful compensation scheme as a "plainly written advance-on compensation arrangement[.]" DE-28, p. 13. But as explained in the Amended Complaint, Lifestance's unlawful compensation scheme was not plainly written. *See* DE-24, ¶ 28, 31, 35-37.

[8] Plaintiffs had to request this information from LifeStance because the terms of the so called "advance" were not clear from the employment agreement, as alleged by LifeStance, and Plaintiffs pay stubs did not contain any information regarding deductions to their gross compensation and how said deductions related to the alleged "advance". DE-24, ¶¶ 35-37.

14

the "gross number" (which represented the employee's gross compensation) but their pay stubs did not contain any information regarding how the gross number was calculated or whether there were any deductions related to the alleged "advance." *See* DE-24, ¶¶ 35-37. Furthermore, the advance was not voluntarily agreed to by the Plaintiffs. There were numerous occasions where Plaintiffs asked LifeStance to stop making the advance, but LifeStance paid it anyway.

LifeStance further contends that Count II should be dismissed because Plaintiffs "fail[ed] to set forth allegations regarding how the collective they seek to represent — including employees in vastly different jobs — were subject to similar practices." As explained above, the Amended Complaint alleges sufficient facts to establish that Plaintiffs and members of the collective action are similarly situated and were subject to similar practices. *See* DE-24, ¶¶ 66, 71; *see also* DE-24, ¶¶ 122, 124-126 (further explaining how Plaintiffs and members of the collective action were subject to similar practices in that LifeStance routinely and systematically made illegal deductions to their pay without reason or description, which forced them to kick-back their wages to LifeStance). Based on the foregoing, the Motion to Dismiss Count II should be denied.

### IV. THIS COURT HAS SUBJECT MATTER JURISDICTION OVER THE PLAINTIFFS' CLAIM FOR DECLARATORY RELIEF.

LifeStance claims this court lacks subject matter jurisdiction over the Plaintiff's claim for declaratory relief. This argument fails for a number of reasons.

⇒ Paragraph 3 of the Amended Complaint establishes that this Court has jurisdiction pursuant to 28 U.S.C. § 1331 because all three of the Plaintiffs' claims are based on a federal statute, and thus involve a federal question.

15

⇒ Paragraph 4 of the pleading likewise establishes subject matter jurisdiction based on the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), which merely requires that "any member of a class of plaintiffs is a citizen of a State different from the defendant" and the aggregated amount in controversy exceeds five million dollars, exclusive of interest, and costs. DE-24, ¶ 4. Plaintiffs are domiciled in Florida and LifeStance is a publicly traded Delaware corporation that maintains its principal place of business in Scottsdale, Arizona. DE-24, ¶ 7. As such, this Court has subject matter jurisdiction over this matter, pursuant to 28 U.S.C. § 1332.

Moreover, this Court has supplemental jurisdiction over Plaintiffs' claim for declaratory relief pursuant to 28 U.S.C. § 1367(a), to the extent that it involves any state law issues. DE-24, ¶ 5. Under 28 U.S.C. § 1367(a), this Court has supplemental jurisdiction over state law claims that share a common nucleus of operative facts with the federal law claim. *Geter v. Galardi S. Enters.*, 43 F. Supp. 3d 1322, 1329 (S.D. Fla. 2014), citing *Lucero v. Trosch*, 121 F.3d 591, 597 (11th Cir. 1997). Here, the Court has federal jurisdiction over Plaintiff's FLSA claims and Plaintiff's claim for declaratory relief and FLSA claims arise from the very same common nucleus of operative facts - namely the employment agreement between the parties and the legality of LifeStance's compensation policies, including LifeStance's attempt to reclaim Plaintiffs' earned wages. Plaintiff's claim for declaratory relief and FLSA claims are so closely related that they form part of the same case or controversy. *See Geter*, 43 F. Supp. 3d 1322, 1329 (finding that a breach of contract claim and FLSA claims arose from a common nucleus of operative facts, therefore, the court had supplemental jurisdiction over the breach of contract claim).

Lastly, LifeStance cites to *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 16, 77 L. Ed. 2d 420 (1983) to support its argument that this

16

Court lacks jurisdiction over Plaintiffs' claim for declaratory relief. The court's holding in that case is not controlling here. Unlike in *Franchise Tax Bd.*, jurisdiction is unequivocally established pursuant to the Class Action Fairness Act of 2005 and all three of the Plaintiffs' claims are based on a federal question.[9]

## V. THE AMENDED COMPLAINT ALLEGES SUFFICIENT FACTS TO STATE A CAUSE OF ACTION FOR DECLARATORY RELIEF.

LifeStance alleges that Plaintiffs claim for declaratory relief should be dismissed because the Amended Complaint "fails to state a plausible claim under the Thirteenth Amendment." However, LifeStance has again misconstrued the allegations in the Amended Complaint to create a false narrative that suits its skewed view of the harm inflicted on its current and former employees. While Count III references the Thirteenth Amendment and the concept of indentured servitude, Plaintiffs' claim for declaratory relief is not based solely on the Thirteenth Amendment or the concept of indentured servitude, it is based on the fact that LifeStance's actions violate federal and state employment laws, including the FLSA.

Count III asks the Court to declare: "(1) Whether the 'claw back' or 'advance' provisions of the contract are void and unenforceable, eradicating the entire contract as compensation provisions are a material term of the contract[;] (2) Whether the employment contract or corporate policies regarding 'Obligations Upon Termination' is void and unenforceable as it relates to the repayment/reimbursement of the

---

[9] All three of the Plaintiffs' claims turn on whether provisions in the employment agreement and LifeStance's compensation policies violate the FLSA.

Incentives/Advance/Debt[;] (3) Whether the 'Compensation' and 'Advance on Compensation' provisions of the contract (and accompanying schedule) are void and unenforceable, eradicating the entire contract as compensation provisions are a material term of the contract[;] and (4) Whether the contract between the parties created a valid, binding, enforceable, and lawful monetary repayment obligation (debt) against Plaintiffs and in favor of LifeStance." DE-24, ¶ 141(a) – (d).  This is not a Thirteenth Amendment claim and Plaintiffs' claim for declaratory relief does not hinge on whether LifeStance's compensation policies and employment agreement violate the Thirteenth Amendment.

Plaintiffs assert that the provisions in the employment agreement pertaining to the "advance" and "obligations upon termination" are void and unenforceable given that they are unconscionable and violate public policy in addition to the FLSA.  DE-24, ¶¶ 133, 137, 138, 141.  While Plaintiffs believe that LifeStance's compensation policies violate the purpose and intent of the Thirteenth Amendment, the Court can issue a declaratory judgment on the issues identified in paragraph 141 of the Amended Complaint regardless of whether there is a violation of the Thirteenth Amendment, given that LifeStance's actions violate public policy, the FLSA and numerous other state and federal laws, evidence of which will be presented at trial.

Plaintiffs alleged sufficient facts to state a cause of action under 28 U.S.C. § 2201, the Declaratory Judgment Act. More specifically Plaintiffs have alleged sufficient facts to show that there is a substantial, ongoing controversy and an actual, present need for a declaration as to whether the provisions in the employment

agreement pertaining to the "advance" and "obligations upon termination" are void and unenforceable. *See Wells Pharmacy Network, LLC v. Regulatory Compliance Assocs.*, No. 5:16-cv-319-Oc-37PRL, 2016 U.S. Dist. LEXIS 144170, at *17 (M.D. Fla. Sep. 28, 2016)(finding that plaintiff alleged sufficient facts to state cause of action for declaratory relief under 28 U.S.C. § 2201, where there was a substantial, ongoing controversy over a contract's interpretation and an actual, present need for a declaration of whether the Contract is enforceable); *see also Nat'l Equestrian League v. White*, No. 20-21746-CIV-MORE, 2021 U.S. Dist. LEXIS 207632, at *9 (S.D. Fla. Oct. 26, 2021)(finding that defendants sufficiently plead a claim for declaratory relief based on a dispute over a contract's interpretation and enforceability). The facts plead show that there is a bona fide dispute between the parties as to whether the subject provisions are unconscionable and violate public policy in addition to the FLSA. DE-24, ¶¶ 130, 132-138.

Furthermore, the alleged facts show that there is substantial likelihood that the Plaintiffs will suffer injury in the future given that LifeStance has continued its efforts to collect money from Plaintiffs based on the debt purportedly created by the "advances" and has threatened legal action against Lead Plaintiffs and other Clinicians for nonpayment of the alleged debt. DE-24, ¶¶ 131, 132; *see also Spectra Chrome, LLC v. Happy Jack's Reflections in Chrome, Inc.*, No. 8:11-cv-23-T-23MAP, 2011 U.S. Dist. LEXIS 41511, at *7 (M.D. Fla. Apr. 7, 2011)(establishing that a specific, concrete threat of litigation can indeed establish a controversy upon which declaratory

judgment can be based).  Based on the foregoing, LifeStance's Motion to Dismiss the Plaintiff's claim for declaratory relief should be denied.

Lastly, Defendants' Motion to Dismiss Count III should be denied given that the Motion does not specify how Plaintiffs failed to allege the necessary elements of a declaratory judgment claim. *See, e.g., Nielson Golden Crab Fishery v. Butterworth*, No. 10-61091-CIV, 2011 U.S. Dist. LEXIS 83855, 2011 WL 3293357, at *2 (S.D. Fla. Aug. 1, 2011) (holding that because the defendant does not "specify how [the plaintiff] failed to allege the necessary elements of a declaratory judgment claim" and "[b]ecause [the defendant] prematurely argues the merits of [the plaintiff's] claim for declaratory relief, this Court denies his motion to dismiss").

WHEREFORE, the Lead Plaintiffs respectfully request that this Court deny Defendants' Motion to Dismiss the Amended Complaint [DE-28], and grant Plaintiffs any additional relief this Court deems just and proper.

        Respectfully submitted,

        éclat Law, PA

        */s/ Kevin K. Ross-Andino and Nikki Pappas Hudson*
        Kevin K. Ross-Andino, FBN 66214
        kevin.ross@eclatlaw.com
        Nikki Pappas Hudson, FBN 126355
        nikki.pappas@eclatlaw.com
        Jolynn M. Falto, FBN 1002743
        Jfalto@eclatlaw.com
        307 Cranes Roost Boulevard # 2010
        Altamonte Springs, Florida 32701
        Phone: (407) 636-7004

        *Trial Counsel for the Plaintiffs*