**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

EMMANUELLA ARMAND, et al.,

        Plaintiffs,

    v.                             Case No.: 6:23-cv-00103PGB-UAM

LIFESTANCE HEALTH GROUP,
INC., and LIFESTANCE HEALTH,
INC.,

        Defendants.

---

**JOINT MOTION FOR (1) CONDITIONAL CERTIFICATION OF
COLLECTIVE ACTION FOR PURPOSES OF SETTLEMENT, (2) ENTRY OF
AN ORDER APPROVING SETTLEMENT, AND (3) AUTHORIZATION OF
NOTICE OF SETTLEMENT TO THE PUTATIVE CLASS AND
INCORPORATED MEMORANDUMOF LAW**

Plaintiffs EMMANUELLA ARMAND, et al., ("Named Plaintiffs"), and

Defendants LIFESTANCE HEALTH GROUP, INC., AND LIFESTANCE

HEALTH, INC., ("Defendants") (collectively "the Parties"), by and through their

counsel of record, on their own behalf and on behalf of other individuals who are

similarly situated to the Named Plaintiffs (the "Collective Members"), have agreed to

a settlement of Named Plaintiffs' collective action under the Fair Labor Standards Act,

29 U.S.C. § 201 et seq. ("FLSA"). Accordingly, the Parties move the Court for:

    1. Conditional certification of the collective for purposes of settlement as
       described in Section IV below;

    2. Approval of the Settlement Agreement attached as Exhibit A; and

3. Approval of the Notice of Settlement to be given to the Collective

Members, which is attached as Exhibit B.

Upon expiration of the Opt-In Period and approval of the Settlement

Agreement, the Parties will request final certification of the collective should the

Court deem it necessary.

## I.    INTRODUCTION AND BACKGROUND

Defendants employed Named Plaintiffs and the Collective Members as

exempt-designated licensed clinical therapists, counselors, social workers, or nurse

practitioners whose jobs involved providing patient care within their medical

specialty. Named Plaintiffs allege, among other things, that Defendants violated the

FLSA by misclassifying Named Plaintiffs and the Collective Members as exempt

from the FLSA's applicable minimum wage and overtime requirements and failing

to pay them minimum and overtime wages due. Named Plaintiffs and putative

Collective Members are represented by Kevin A. Ross ("Collective Counsel").

This litigation has been comprehensive and contentious. The Parties have

vigorously advanced their respective positions since this case was filed. Settlement

negotiations likewise were hard fought. The Parties initially mediated this case with

Frank Bedell on June 27, 2023, but returned to litigation after that mediation resulted

in an impasse notwithstanding Mr. Bedell's assistance. LifeStance filed

counterclaims, the Parties completed written discovery and document production

that included pay and time records, and Named Plaintiffs amended this lawsuit to

2

add additional named Plaintiffs and nationwide putative FLSA collective claims. *See* DE. 91.

On December 17, 2024, the Parties conducted a second mediation with David A. Rotman, a prominent mediator who specializes in large FLSA collective actions and employment class actions. A long day of negotiations ultimately resulted in the Parties' arm's length Settlement that fully resolves this case.

The Settlement cornerstone is the immediate, substantial, and concrete monetary relief it provides to the Named Plaintiffs and Collective Members, which is significant considering the challenges the Named Plaintiffs would have in proving their claims and damages and in certifying a collective under the FLSA. As set forth in the Agreement, the Settlement creates a Settlement Fund of approximately $332,000 from which Collective Members who opt in will receive payments based on the number of patient appointment hours worked. The settlement administration costs, amounts awarded by the Court for attorneys' fees and expenses, and Named Plaintiffs' service awards will be deducted from the Settlement Fund prior to payments to the Collective Members. The Settlement also provides that the best practicable notice be provided to Collective Members by mail, email, and text message, and calls for the designation of ILYM Group, Inc., as Settlement Administrator. The Settlement is fair and reasonable and meets the FLSA standard for preliminary approval given the monetary relief to be provided by the Settlement Agreement, which experienced counsel reached with Mr. Rotman after much litigation and negotiation. The Parties thus respectfully move the Court to approve

3

the Settlement Agreement and to preliminarily certify the settlement collective for

settlement purposes.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    LifeStance Employs Medical Professionals Like the Named Plaintiffs

LifeStance is a mental healthcare company focused on providing evidence-

based, medically driven treatment services for children, adolescents, and adults

suffering from a variety of mental health issues in an outpatient care setting, both in-

person and through its digital health telemedicine offering. DE. 53, Counterclaims ¶

12. LifeStance employees a variety of mental health medical professionals, including

licensed therapists, counselors, and nurse practitioners. *Id.* ¶ 13. Each of these

medical professionals has a different level and type of education, training, licensure,

and regulatory requirements, and each performs different services and types of care

for patients based on their education, experience, and judgment. *Id.* ¶¶ 13, 16.

### B.    LifeStance's Fee Basis Compensation System and Advance-on-Compensation Benefit

As is common among mental healthcare practices, LifeStance compensates

many of its medical professionals like Named Plaintiffs using a "fee-for-service" or

"fee-basis" method as outlined in 29 CFR § 541.605. *Id.* ¶ 17. This meant that

Plaintiffs earned their compensation through a formula based on a set fee that

LifeStance charged a patient based on the specific services provided to that patient.

*Id.* This fee is based on a variety of factors including, for example, how much

LifeStance would be reimbursed by insurance companies or Medicare for performing

4

that service. *Id.* The fee is an all-in payment that compensated the Named Plaintiffs not only for the time spent with the patient, but also all administrative work associated with the patient visit that could take place before, during, or after the patient appointment. *Id.* Named Plaintiffs each received and agreed to a schedule that showed the specific fee they would receive for each service they completed and properly submitted. *Id.*

One challenge of the fee-for-service compensation model is that medical professionals like Named Plaintiffs often start work for LifeStance without an established network of patients. *Id.* ¶ 19. This might be because they have just graduated or become licensed, because they have just moved to a new area, or because they have come from another practice that restricted them from working with their former patients. *Id.* Because under the fee-for-service model a clinician only earns compensation for treating patients, this can result in a challenging period as the clinicians ramp up their patient caseload. *Id.*

To help transition such medical professionals while they build up a patient caseload, LifeStance offers an advance-on-compensation benefit. *Id.* ¶ 20. It is an optional benefit, and LifeStance does not force its employees to use this benefit if they do not want it. *Id.* Most medical professionals who take advantage of the advance-on-compensation benefit find it to be helpful as they start their careers at LifeStance and have no difficulty paying it back as they ramp up their case load and begin working full-time. *Id.* ¶ 21.

### C.    Named Plaintiffs' Employment Agreements with LifeStance

The majority of Named Plaintiffs entered into a Provider Employment Agreement with LifeStance prior to starting their employment with LifeStance. *Id.* ¶ 22. These Provider Employment Agreements outline the compensation structure for each Named Plaintiff's work at LifeStance, including the fee-for-service compensation model described above. *Id.* These agreements also outline the optional advance-on-compensation benefit, which generally provides for a guaranteed monthly advance on wages that the employee must repay through paycheck deductions as their practice ramps up, and the balance of which becomes immediately due should the employee stop working at LifeStance. *Id.* ¶¶ 23-24. Functionally, this benefit acts as a loan. *Id.*

A majority of the Named Plaintiffs enrolled in the advance-on-compensation program, accepted the loan of unearned wages, and agreed to have the amounts deducted from their paychecks as they worked and earned the amounts LifeStance had already paid them. *Id.*

### D.    The Named Plaintiffs File Lawsuits against LifeStance

This action was filed on January 20, 2023, originally on behalf of six former LifeStance nurse practitioners, alleging that the advance-on-compensation benefit was an illegal "kickback" under the FLSA, that LifeStance therefore failed to pay them minimum and overtime wages, and that LifeStance practices violated state unfair debt laws. DE. 1. The complaint also sought to bring these claims on a class

and collective basis for all current and former LifeStance nurse practitioners in Florida. *Id.*

After LifeStance moved to dismiss the original complaint, the original six Named Plaintiffs amended their complaint to drop the debt-related claims, resulting in the three claims that remain:  (1) failure to pay minimum/overtime wages under the FLSA; (2) violation of the FLSA's "anti-kickback" provision; and (3) declaratory relief seeking to excuse Named Plaintiffs from the obligations in their employment agreements. DE. 91. Shortly after, Collective Counsel filed an identical action in the United States District Court for the District of Arizona alleging the same three causes of action on behalf of the nine other Named Plaintiffs that sought to represent a nationwide class and collective of licensed therapists, counselors, and nurse practitioners (*McAfee v. Lifestance Health Group Inc.,* Case No. 2:23-cv-01144-DJH (D. Ariz. 2023) (the "Arizona Lawsuit"). Declaration of Kevin A. Ross ("Ross Decl.") ¶ 2.

**E.    LifeStance Files Counterclaims Against Most of the Named Plaintiffs**

LifeStance filed counterclaims against most Named Plaintiffs in this matter and the Arizona Lawsuit to enforce their contractual promises to repay the loans made in the form of advanced (but unearned) wages. DE. 53; Arizona Lawsuit DE. 38. The Named Plaintiffs moved to dismiss the counterclaims in both lawsuits. DE. 62; Arizona Lawsuit DE. 40. This Court denied Named Plaintiffs' motion to dismiss, and the Named Plaintiffs' motion to dismiss in the parallel Arizona case was terminated when the case was stayed. DE. 81; Arizona DE. 49.

7

### F. The Parties' Litigation

Over the last two years, the parties have engaged in significant litigation. In addition to the pleadings discussed above, the parties exchanged initial disclosures and completed written discovery. Ross Decl. ¶ 3. This included LifeStance producing substantial documentation related to the Named Plaintiffs, particularly detailed records that reflected the Named Plaintiffs' pay and patient appointments worked. *Id.* ¶ 4. The Named Plaintiffs likewise produced documentation related to their agreements and work at LifeStance. *Id.* ¶ 5. LifeStance also produced substantial data related to the putative collective in this case, i.e. pay and patient appointment data related to hundreds of clinicians from all over the country. *Id.* ¶ 4. The parties were in discussions to begin depositions when they turned their focus to settlement. *Id.* ¶ 6.

LifeStance has and continues to deny that it committed any wrongdoing, wrongful act, or violation of law as alleged by Named Plaintiffs. *Id.* ¶ 7. Because the Named Plaintiffs and Collective Members were medical professionals who independently provided medical care to patients under their state licensures, LifeStance argues they fit squarely under the FLSA's professional exemption. *Id.* LifeStance also points to the fact that Named Plaintiffs and putative Collective Members worked virtually no overtime and earned far above the FLSA's required minimum hourly wage – **based on data sampling, it appears that around 0.01% of pay periods reflected an employee working more than 40 patient appointment hours in a week**. *Id.* ¶ 8. LifeStance further highlights that the Department of Labor

and federal courts have approved an advance-on-compensation program like LifeStance's. *Id.* ¶ 9. Finally, LifeStance asserts the Named Plaintiffs would have difficulty certifying a collective because: (1) there is substantial difference among their job types; (2) there is a substantial difference among how their jobs are performed based on which state they practice in; (3) there would be individualized inquiries about their job duties and their signing of their employment agreements; (4) differences in state contract law that would affect their challenges to the enforceability of their employment agreements; and (5) they would face an uphill fight to serve as collective representatives given the counterclaims against them. *Id.* ¶ 10. LifeStance has vowed to defend this litigation, oppose certification of the FLSA collective, and succeed at summary judgment or trial on the merits if necessary. *Id.* ¶ 11.

Named Plaintiffs believe that the claims asserted here against LifeStance have merit and that they would have prevailed on certification, at summary judgment, and/or trial. *Id.* ¶ 12.

### G.    The Parties' Mediations

The Parties first mediated this case with Frank Bedell on June 27, 2023, but could not reach a resolution. *Id.* ¶ 13. The Parties continued discussing potential settlement, and eventually outlined a general structure on what that might entail. *Id.* ¶ 14. To simplify litigation and set up a potential settlement, the Parties agreed to consolidate the Arizona Lawsuit into this one, so they moved to amend the

complaint here to add the plaintiffs from the Arizona Lawsuit, to add several more
plaintiffs who had opted in to the collective claims, to add nationwide class and
collective allegations, and to dismiss the Arizona Lawsuit. *Id.* Having simplified this
to one matter, the Parties proceeded to mediate with David Rotman on December
17, 2024. *Id.* ¶ 15. Mr. Rotman is a highly experienced mediator who specializes in
employment cases and wage-and-hour class and collective actions. *Id.* ¶ 16. After a
daylong mediation with Mr. Rotman, the Parties reached agreement on principle
settlement terms, which later formed the foundation of the Settlement Agreement. *Id.*
¶ 17.

    While both parties believed they had paths to winning this lawsuit, both have
considered the uncertainty and risks inherent in any litigation and have concluded it
is desirable and beneficial to fully and finally settle this litigation upon the terms and
conditions set forth in the Settlement Agreement. *Id.* ¶ 18. Named Plaintiffs and
Collective Counsel recognize the expense and delay associated with continuing the
litigation against LifeStance through certification proceedings, summary judgment,
trial, and any subsequent appeals. *Id.* ¶ 19. Named Plaintiffs and Collective Counsel
have accounted for the uncertain outcome and risks of litigation, especially in
complex collective and class actions such as this, as well as the difficulties inherent in
such litigation, and particularly here where LifeStance has strong arguments for an
FLSA exemption, and the Named Plaintiffs and Collective Members appear to have
limited damages. *Id.* Therefore, Named Plaintiffs believe it is desirable that this
litigation be fully and finally compromised, settled, and resolved with prejudice. *Id.* ¶

20. Based on its evaluation, Collective Counsel has concluded that the terms and

conditions of this Settlement Agreement are fair, reasonable, and adequate to the

Collective Members, and that it is in their best interests to settle the claims raised in

the litigation as set forth in the Settlement Agreement. *Id.* ¶ 21.

### III.    THE SETTLEMENT AGREEMENT TERMS

After months of contentious litigation and two rounds of mediation with two

different mediators, the Parties have reached a settlement that, if this Court approves,

will resolve all wage and hour claims Plaintiffs and the putative class members have

asserted against LifeStance.

The Named Plaintiffs decided to settle on an individual basis their claims

based on LifeStance's advance-on-compensation benefit. Ross Decl. ¶ 22. This is

because the Named Plaintiffs concluded that the variances in state contract law, the

individualized inquiries required to determine the enforceability of each employment

contract, and the DOL and federal court opinions endorsing an advance-on-

compensation benefit all rendered these claims substantively challenging and unfit to

pursue or resolve on a collective basis. *Id.* The Parties thus have entered individual

settlement agreements to resolve and dismiss Count II (violation of the FLSA's "anti-

kickback" provision) and Count III (declaratory relief seeking to excuse Named

Plaintiffs from the obligations in their employment agreements) purely on an

individual basis. *Id.* ¶ 23.  The Parties concurrently move to dismiss these claims with

prejudice. *Id.*

11

For the remaining Count I (failure to pay minimum/overtime wages under the FLSA), the Parties propose to certify a Settlement Collective consisting of Named Plaintiffs and all individuals who (1) timely and properly opt in to participate in the Settlement, and (2) worked for LifeStance as nonphysician clinicians and received an advance on compensation or any other recoverable incentive payment from Defendants at any time going back three years from the date the Court grants preliminary approval of the settlement.[1]

### A.    Monetary Settlement Relief

The Settlement shall provide monetary relief to those who opt-in from a potential collective of approximately 3,300 Collective Members. Ross Decl. ¶ 25. The Settlement Agreement allows the Collective Members to look to a common Settlement Fund calculated by multiplying $100 times the number of putative collective members as measured from the date that is three years prior to the date the Court approves the Settlement through the date of such approval (currently estimated to be approximately $332,000) created by Defendants for settlement and satisfaction of their claims. *See* Ex. A at I, N. The Settlement is a "claims made" settlement such that the Collective Members must return a timely, valid Claim Form to waive their FLSA claims and receive a settlement payment. Ross Decl. ¶ 26. Any unclaimed

---

[1] Under the FLSA, the statute of limitations period is tolled when a collective member files a written consent to join the matter. 9 U.S.C. § 256. To avoid the practical challenges of differing statute of limitations periods based on when putative Collective Members submit valid opt-in forms, the Parties have agreed to toll the statute of limitations on the date the Court enters an order granting preliminary approval of the settlement. This will result in an expanded statute of limitations period for putative Collective Members.

settlement payments revert to Defendants because any Collective Member who does not return a claim will retain their FLSA rights so any such Collective Member may later file an individual FLSA action.

Collective Members who opt in will receive a pro rata settlement amount based on how the number of patient appointment hours each worked during the Collective Period, adjusted to reflect the relative compensation based on the Collective Member's position at LifeStance. *Id.* at 26. Each Collective Member's share shall be calculated by dividing the number of his or her patient appointment hours during the collective period by the sum total of all patient appointment hours worked by all Collective Members during the collective period. This calculation will result in a percentage share for each Collective Member (the "Unweighted Share"). The Unweighted Share will then be subjected to a multiplier to reflect the relative compensation among the different roles worked by Settlement Collective Members as follows, resulting in a "Weighted Share" for each Settlement Collective Member:

| Position | Multiplier |
|---|---|
| Therapist, Social Worker, or Counselor | 1.0 |
| Nurse Practitioner | 1.9 |

The Parties will divide each Collective Member's Weighted Share by the sum
of all Weighted Shares for all Collective Members and multiply that number by the
Net Settlement Amount, which shall equal the individual settlement payment
available for each Collective Member. In this way, each collective member shall
receive a payment that is proportionate to how many hours they worked and their
relative wage.

One-half (50%) of each settlement payment will represent wages allegedly due
and will be subject to required legal deductions and reported on a Form W-2, and
one-half (50%) of every settlement payment will represent alleged liquidated damages
and interest and will be reflected on a Form 1099. The Settlement Fund also will be
used to pay all administrative expenses, attorney fees and expenses, and a Collective
Representative Service Award of $500 for each Named Plaintiff. *Id.* ¶ 27.

B.     **Class Notice and Claims Administration**

The parties request that this Court appoint ILYM Group, Inc., a reputable
settlement administrator, to act as the Claims Administrator for the Parties'
Settlement. The Claims Administrator will disseminate the best practicable notice,
oversee a transparent settlement administration process, institute a toll-free contact
line and centralized post-office box to correspond with Collective Members, and
implement a detailed process for administering the settlement payments for
Collective Members.

The Notice program provides that Collective Members will receive Notice via
first-class mail, personal email addresses, and text message. The Collective Member

can then return the Claim Form within sixty (60) days via the enclosed postage paid envelope and/or email. The Notice provides the Collective Members with important information regarding the Settlement and their rights, including a description of the material terms of the Settlement; the gross dollar amount they will receive if this Court approves the Settlement; the date by which Collective Members must opt-in to the Settlement; the date by which Collective Members may object to the Settlement; Collective Counsel's fee application and Collective Representative Service Award request; the Final Approval Hearing date; and other important Settlement information.

If the Court grants final approval of the Settlement, Defendants will fund the Settlement Fund within fourteen (14) days after the Court's Final Order becomes final and non-appealable. Settlement checks will then be mailed to all Collective Members. In exchange, the Collective Members agree to a limited release of all claims for failure to pay minimum or overtime wages under the FLSA as alleged in this Litigation. The Named Plaintiffs also agree to a general release if this Court approves their Collective Representative Service Awards.

### C.    Other Settlement Terms

Pursuant to the Settlement Agreement, Collective Counsel is authorized to petition the Court for up to 30% of the fund as attorneys' fees and costs. Collective Counsel will file a separate motion seeking approval for fees and costs. Defendants agree to not oppose the amount of fees and costs sought by Collective Counsel.

Similarly, Named Plaintiffs will move this Court for a Collective

Representative Service Award of $500 for their continued work in litigating and

settling this case. Collective Counsel will request this award in a separate motion.

Finally, Defendants will cause notice of the proposed settlement to be served

upon the appropriate Federal and State officials, as required by the Class Action

Fairness Act of 2005 ("CAFA"). This will be done within ten (10) days of filing this

Motion.

## IV.    THE APPLICABLE LEGAL STANDARDS ARE MET FOR THE COURT TO CONDITIONALLY CERTIFY A COLLECTIVE ACTION AND APPROVE PARTIES' SETTLEMENT

The Court should conditionally certify a collective action for purposes of

settlement and preliminarily approve the Parties' Settlement Agreement. Courts

universally encourage the early settlement of class or collective actions because early

settlement allows class or collective members to recover without delay and conserves

judicial resources. *Hernandez v. Merrill Lynch & Co., Inc.,* 2012 WL 5862749 (S.D.N.Y.

Nov. 15, 2012) (endorsing early settlement of wage and hour class action); *see also*

*Diaz v. E. Locating Serv., Inc.,* 2010 WL 550791 (S.D.N.Y. Nov. 29, 2010) (granting

final approval of pre-suit class settlement in wage and hour case). Here, the Parties

have reached a fair and reasonable Settlement that will allow putative Collective

Members to benefit from the terms of the Settlement without prosecuting their own

separate lawsuits. Further, because putative Collective Members must affirmatively

opt-in to the Settlement, any who disagree with the Settlement terms will not be

prejudiced in any way by approval of the Settlement because they can simply choose not to opt in and can pursue their own claims.

### A.   The Collective Should be Certified for Settlement Purposes

The Parties ask the Court to conditionally certify a collective action for settlement purposes only, and to send the Notice and Claims Administration Form. Certification of a collective action is typically a two-step process. *Hipp v. Liberty Nat'l Life, Inc.*, 252 F.3d 1208, 1218 (11th Cir. 2001). The first step, conditional certification, is considered under a lenient standard where the plaintiffs must merely demonstrate that they are similarly situated. *Calderone v. Scott*, 838 F.3d 1101, 1104 (11th Cir. 2016) ("At the certification stage [plaintiffs' burden] is not particularly stringent.") The second step (usually triggered by a motion to decertify the collective) requires a more intensive review by the Court of whether opt-in plaintiffs are similarly situated. *Hipp,* 252 F.3d 1208, 1213.

In contrast to a Rule 23 class action, the certification requirements for an FLSA collective action are not difficult to meet. Plaintiffs must demonstrate that they are "similarly situated." *Calderone,* 838 F.3d 1101, 1104. "At the certification stage, this requirement is not particularly stringent." *Id.* (citing *Hipp,* 252 F.3d 1208, 1214, 1217).

After a court conditionally certifies a case, the court allows parties to provide notice to Collective Members, who then decide whether to join ("opt in") to the case. The Parties here ask, and stipulate to, the Court conditionally certifying this action under the FLSA for settlement purposes only, and thus to allow them to mail the

17

Notice and Claims Administration Form to all FLSA putative Collective Members. Named Plaintiffs contend that there is sufficient evidence to meet the requisite evidentiary showing to conditionally certify the collective for settlement purposes only, because all putative Collective Members worked in the same job categories as Named Plaintiffs and were or are subject to the same compensation regime as Named Plaintiffs, including participation in the advance-on-compensation program. Defendants agree to collective treatment and notice for the purposes of settlement.

## B. The Proposed Settlement Meets Criteria for FLSA Settlement Approval

Under Eleventh Circuit case law, the Court may approve a collective settlement of an FLSA claim if the agreement is fair and adequate. *See Lynn's Food Stores, Inc. v. United States,* 679 F.2d 1350, 1353. In *Lynn's Food Stores,* the Court explained that settlements "may be permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the action by the employees provides some assurance of an adversarial context. The employees are likely to be represented by an attorney who can protect their rights under the statute." *Id.* at 1354.

The Settlement Agreement the Parties present to the Court in the instant case is the hard-fought product of months of formal and informal negotiations. Named Plaintiffs[2] and Defendants were represented by experienced counsel. The Settlement

---

[2] As of the time of filing, Class Counsel continues to collect some Named Plaintiffs' signatures on the Settlement Agreement for filing with the Court but attests that all Named Plaintiffs have reviewed and approved the Settlement Agreement and approve of its terms. *See* Ross Decl. ¶ 28.

Agreement is therefore fundamentally fair and adequate and was the product of circumstances the Eleventh Circuit has deemed appropriate for the purposes of producing permissible private settlements of employees' FLSA claims.

Settlements of FLSA collective actions are more readily approved than are class action settlements under Fed. R. Civ. P. 23 because an FLSA settlement binds only those who opt in. Ergo, an FLSA collective action settlement does not present the same fairness concerns as a Rule 23 settlement, which binds all class members unless they opt out. *McMahon v. Olivier Cheng Catering & Events, LLC,* 2010 WL 23998328, at *6 (S.D.N.Y. Mar. 3, 2010). As the Eleventh Circuit has observed, initiation of litigation by employees in an FLSA suit makes it more likely that a settlement is "a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching." *Lynn's Food Stores,* 679 F.2d 1350 at 1354. If the Court determines that a settlement is indeed a "reasonable compromise of disputed issues," then the Court should approve the settlement to promote the public policy of encouraging settlement of litigation. *Id.*

In *Lynn's Food Stores,* the Court indicated that the focus, in determining whether an FLSA settlement is fair and reasonable, should be whether the settlement is the product of an adversarial context wherein plaintiffs were represented by attorneys and is fair considering the issues in dispute. Here, all the factors set out by the Eleventh Circuit are clearly met.

*First,* as discussed above, the Settlement is the product of protracted litigation that included two formal mediations and preceding and subsequent informal

19

negotiations. The Settlement resolves several disputed factual and legal issues,

including:

(i)    Whether Named Plaintiffs and Putative Collective Members, who were licensed therapists, psychiatric nurse practitioners, or social workers, going back three years from the date of this filing, were covered by an exemption to the overtime provisions of the FLSA;

(ii)    Whether Named Plaintiffs and Putative Class Members worked overtime hours or earned less than the required minimum wage during the Collective Period; and

(iii)    Whether Named Plaintiffs and Putative Class Members are entitled to recover liquidated damages, interest, costs, and attorneys' fees.

Defendants denied (and continue to deny) all allegations made by the Named

Plaintiffs. If Defendants had prevailed on some or all of their defenses, Named

Plaintiffs would have received less than they are receiving under the Settlement

Agreement, or perhaps nothing at all. Additionally, Defendants asserted good faith

and reasonable grounds for their pay policies which would have precluded the

Named Plaintiffs from recovering liquidated damages (i.e., double damages) under

the FLSA or from calculating damages going back three years. *See* 29 U.S.C. § 260.

Moreover, if this litigation were to proceed, Defendants would seek to

decertify the action based on various factors that undermine the appropriateness of

collective treatment, including the differences in duties among Named Plaintiffs and

putative Collective Members, individualized inquiries around Named Plaintiffs' and

putative Collective Members' entering provider employment agreements, and

Defendants' counterclaims against Named Plaintiffs. If the Court were to decertify

the collective action, then litigation on both sides would have amounted to nothing.

The issues in dispute would be resolved, if at all, by the adjudication of multiple individual claims—and many Putative Class Members would not have brought suit at all given the nominal sums at issue even if they fully prevailed. Accordingly, the Parties fully realize the risks inherent in proceeding with costly collective action litigation and took these into consideration when negotiating the Settlement.

The Settlement Agreement was the result of adversarial, arm's length negotiations and mediation. In determining whether a settlement was negotiated at arm's length, courts look to whether there was "vigorous or comprehensive litigation" or whether the settlement was a result of collusion among the parties. *Pickett v. IBP,* 2001 U.S. Dist. LEXIS 22453 (M.D. Fla. December 21, 2001); *see also D'Amato v. Deutsche Bank,* 236 F.3d 78, 85 ("This Court has noted that a court-appointed mediator's involvement in pre-certification settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure.")

### 1.  The Settlement Was Arm's-Length

As discussed above, the Settlement Agreement is the product of arm's-length negotiations by experienced counsel. The Parties were able to reach this agreement only after they engaged in two full days of mediation (with two different, experienced mediators) of the disputes at issue in this matter, and informal negotiations thereafter. *See Diaz v. Hillsborough County Hosp. Authority*, 2000 WL 1682918, at *4 (M.D. Fla. Aug. 7, 2000) (internal quotations omitted) ("In the absence of fraud, collusion or the like, the Court is entitled to rely upon the judgment

21

of experienced counsel for the parties and should be hesitant to substitute its own judgment for that of counsel.")

### 2. The Settlement Is a Reasonable Compromise of Disputed Issues, and the Distribution Is Equitable

As set forth above, given the issues in dispute and arguments on both sides, the Settlement constitutes a reasonable compromise, with each side obtaining something they would not otherwise have. Furthermore, distributions from the settlement fund will be equitable. The distributions reflect the number of patient appointments completed by the Named Plaintiffs and putative Collective Members based on LifeStance's personnel data and medical records. Each putative Collective Member who opts in will receive a share of the settlement fund based upon how much they worked relative to other Collective Members, determined through an analysis of the medical appointments they completed based on the information available to both parties.

As explained above, in an FLSA collective action, an employee belonging to class of similarly situated plaintiffs must "opt-in" to the class by filing a written consent with the Court in order to be bound by the outcome of the case or the settlement. 29 U.S.C. § 216(b). As a result, putative Collective Members are not prejudiced by being committed to a Settlement they might not agree with. They can either choose to opt in or choose not to and retain all their rights. This allows putative Collective Members to choose whether to participate in the Named

Plaintiffs' Lawsuit and the negotiated Settlement without having to initiate litigation themselves.

## V. MODEST SERVICE AWARDS FOR COLLECTIVE REPRESENTATIVES ARE APPROPRIATE

Under the terms of the proposed Settlement, the Named Plaintiffs who initiated this lawsuit, participated in the mediation, responded to discovery, and offered valuable information for the prosecution of the case on behalf of the collective will benefit from the receipt of modest service payments. Such payments are not unusual to compensate plaintiffs whose time and dedication contributed to making a settlement possible. "Courts routinely approve incentive awards to compensate named plaintiffs for the services they provide and the risks they incurred during the course of the class action litigation." *Hosier v. Mattress Firm, Inc.,* 2012 WL 2813960, at *5 (M.D. Fla. June 8, 2012), citing *Ingram v. The Coca-Cola Co.,* 200 F.R.D. 685, 694 (N.D. Ga. 2001) (quoting *In Re S. Ohio Correctional Facility,* 175 F.R.D. 270, 272 (S.D. Ohio 1997)). "Such awards are justified when the class representatives expend considerable time and effort on the case, especially by advising counsel, or when the representatives risk retaliation as a result of their participation." *Ingram,* 200 F.R.D. at 694.

Here, the Named Plaintiffs spent significant time and effort prosecuting the case and assisting Collective Counsel. The service awards of $500 reflected in the Agreement and agreed to by Defendants are within the range typically approved by courts in collective actions and should be approved.

## VI.    PROPOSED SCHEDULE FOR FINAL SETTLEMENT APPROVAL

| | |
|---|---|
| Defendants Supply Administrator with Collective Data | 45 days from Court's Order |
| Administrator Confirms Collective List | 60 days from Court's Order |
| Deadline for Serving Notices to Collective Members | 90 days from Court's Order |
| Deadline for Collective Members to Opt-In | 150 days from Court's Order |
| Deadline for Parties to Move for Final Certification of the Collective | 165 days from Court's Order |
| Defendants to Fund Settlement Fund | 14 days after Court's Final Order becomes final and non-appealable |

## VII.   CONCLUSION

For the reasons stated above, the Parties jointly request that the Court:

1. Approve the Settlement Agreement as fair and reasonable;

2. Conditionally certify this case, for settlement purposes only, as a collective action under Section 216(b) of the FLSA;

3. Approve the issuance of the proposed Notice and Claims Administration Form to the putative Collective Members; and

4.    Retain jurisdiction to enter final judgment and dismiss the case with prejudice after the Parties notify the Court that the notice and administration process is complete.

Respectfully submitted this 25th day of April 2025.

| | |
|---|---|
| Respectfully submitted:<br><br>DAVIS WRIGHT TREMAINE LLP<br><br>By: s/ *Gregory Hendershott*<br>Gregory Hendershott, S*pecial Admission*<br>Lead Counsel for Defendants<br>GregHendershott@dwt.com<br><br>Matt Jedreski, *Special Admission*<br>MJedreski@dwt.com<br>920 Fifth Avenue, Ste. 3300<br>Seattle, WA  98104<br>Phone: (206) 622-3150<br><br>Matthew Tuchman<br>Florida Bar No. 109297<br>MatthewTuchman@dwt.com<br>1301 K Street NW<br>Suite 500 East<br>Washington, D.C. 20005<br>Telephone:  (202) 973-4200<br><br><br>*Attorneys for LifeStance Health Group, Inc.<br>and LifeStance Health, Inc.* | Quintairos Prieto Wood and Boyer PA<br><br>By: s/ *Kevin K. Ross-Andino*<br>Kevin K. Ross-Andino, FBN 66214<br>Jolynn M. Falto, FBN 1002743<br>255 South Orange Avenue, Suite 900<br>Orlando, Florida 32801<br>Kevin.ross@qpwblaw.com<br>Jolynn.falto@eclatlaw.com<br>kkr.pleadings@qpwblaw.com<br>Phone: (407) 872-6011<br><br><br>*Lead trial counsel to the Plaintiffs and each<br>Class Member/Collective Action Member* |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 25, 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send notice of electronic filing to all CM/ECF participants.

By:  s/ *Matt Jedreski*

Matt Jedreski, S*pecial Admission*
mjedeski@dwt.com
920 Fifth Avenue, Ste. 3300
Seattle, WA  98104
Phone: (206) 622-3150